UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THOMAS J. PRONTI,

              **Plaintiff**

 against                                 **CASE NO.  03-CV-1518 (GTE-DRH)**

CNA FINANCIAL CORPORATION and
CNA EMPLOYEE RETIREMENT PLAN

              **Defendants**

**G. THOMAS EISELE, SENIOR DISTRICT JUDGE, sitting by designation**[1]

**MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT**

Before the Court is Defendants' Motion for Summary Judgment presenting the issue of whether Plaintiff Thomas J. Pronti ("Pronti") is entitled to additional retirement benefits under an employee retirement benefits plan.  After a review of the parties' submissions, the record in this case and careful consideration of the issues presented thereby, the Court concludes that the Defendants are entitled to judgment as a matter of law.

**FACTS WITHOUT MATERIAL CONTROVERSY**

From March 1983 through October 7, 1994, Plaintiff Pronti was employed by Continental Insurance Company ("CIC") as a trial attorney working in CIC's Albany, New York office.  While employed by CIC, Pronti's pension benefits were governed by the Retirement Plan of the Continental

---

[1] On April 27, 2006, this case was reassigned to the undersigned visiting judge for all further proceedings.

Corporation (the "CIC Plan").  While Pronti was employed by CIC, he held himself out as a member of the law firm "Moran & Pronti" in order to avoid identifying CIC in litigation.  Richard Moran was also employed by CIC as the managing trial attorney for the Albany office.  On October 7, 1994, CIC closed its Albany office, at which time the employment of Pronti and Moran ceased.  At that point, Pronti had earned enough credit in the CIC Plan to be a vested plan participant entitled, upon meeting certain age requirements, to retire with a benefit under the CIC Plan.

Following the employment separation, Pronti and Moran worked out an arrangement whereby Pronti and Moran became outside "panel counsel" for CIC.  Pronti and Moran continued to work out of the same office under the same law firm name of "Moran & Pronti" and most of their legal work was for CIC (and post-merger, for CNA).

Effective May 10, 1995, CIC merged with CNA Financial Corporation ("CNA").  As the surviving entity of the merger, CNA assumed responsibility for the obligations of CIC, including the CIC Plan.  In 1996, CNA decided it wanted to operate a "staff counsel" office out of Albany to handle the cases that Pronti and Moran had been handling as outside panel counsel.  CNA offered Pronti and Moran employee staff counsel positions.  Pronti and Moran returned to their previous employment relationship, this time with CNA rather than CIC, and continued to use their firm name of "Moran & Pronti."

Pronti alleges that the pension benefit was of prime concern to him and Moran in determining whether to resume an "in house" position with CNA.  However, Pronti could not recall having any discussions with Ralph Alio, who hired him, or anyone else from CNA about the status of his pension benefits if he accepted the staff counsel position.  Instead, Pronti relied upon Moran to negotiate the terms of employment with CNA for both of them.

Moran had discussions with various CNA representatives to negotiate said terms.  When Ralph Alio, CNA Vice President/Regional Counsel, was unable to address concerns raised by Moran about their pension status, Mr. Alio referred Moran to CNA's Human Resources division.  Moran spoke with Maria Bover, during which conversations Moran attempted to determine whether they "would be getting full credit for the years with Continental in the CNA plan" when their retirement benefits were calculated.  (Moran depo. at 43).  Moran understood Ms. Bover to explain during a telephone conversation that he and Pronti would be considered rehires and that they would get "full pension benefits and credits for the years [they] had with Continental in the CNA plan, and it was not going to be x years in the Continental plan and x years in the CNA plan with one check for your Continental years, one check for the CNA years" but "[i]t would be stacked and there was going to be a check from the CNA pension plan."  (Moran depo. at 44-45).

Moran asked Ms. Bover to send him something to verify their conversation.  In response, Ms. Bover faxed Moran an e-mail dated March 27, 1996.  The e-mail reads:

> From: Bover, Maria
> To: Racansky, Charles
> Subject: CIC rehire
> Date: Wednesday, March 27, 1996 1:35 p.m.
> I have two possible hires who were RIF'd at CIC in October, 1994 when CIC closed down the legal office in Albany, N.Y.  CNA is now going to open an office and we want to hire the CIC ATTY's.
> Would they be rehires or new hires?
>
> If rehired, what do they get on vesting, vacations, sick days and saving plan participation?
>
>
> From:         Racansky, Charles
> To:           Bover, Maria
> Subject:      RE: CI rehire
> Date:         Wednesday, March 27, 1996 4:14 pm

3

> They should be coded as rehires, class code 102.  As per our policy on rehires, the only service credit that they would receive would be for our Pension and Savings Plans.  Their actual service credit would depend on their participation in the CIC programs prior to their termination.  No service can be credited on any other CNA benefit plan.

(Def.'s Exh. 4).

Moran shared the e-mail from Ms. Bover with Pronti.  Moran also explained the terms of the employment offer to Pronti, which included a salary of $90,000 and a pension that was "stacked and not separated."   (Moran, depo. at 55).

Pronti testified during his deposition that Moran told him that "CNA was going to honor [their] retirement from Continental and that [they] would continue on with vested rights and accrual of all of the pension benefits from. . . Continental merging into and carrying over into CNA."  (Pronti, depo. at 45).  Moran also showed Pronti the e-mail from Ms. Bover.[2]

When Pronti accepted CNA's employment offer, Pronti was unaware of the specifics of CNA's benefit plan, but Pronti believed that CNA's plan was better than the CIC plan.  Pronti did not review a copy of CNA's benefit plan prior to accepting the job or at any time while he was employed.  Mr. Pronti was uncertain during his deposition whether he was provided with a copy of the summary plan description explaining CNA's pension benefits, although he recalled getting "a big package of stuff for retirement" which he did not read.  (Pronti depo. at 74-75).

Pronti accepted the CNA staff counsel position.  In accepting the position, Pronti relied in

---

[2] There is a factual disagreement regarding whether Pronti actually reviewed the written e-mail prior to accepting the job.  At one point in his deposition, Pronti stated that he could not recall whether he saw Ms. Bover's e-mail response prior to accepting CNA's employment offer.  (Pronti depo., at p. 66).  For purposes of this opinion, the Court assumes that Pronti actually saw the e-mail in question prior to accepting CNA's offer.  Otherwise, Pronti could not prevail on his promissory estoppel theory given the absence of any writing which could have   influenced his decision.

part on the pension benefits as he understood they would be provided. Because the Court views the facts in a light most favorable to Pronti, the Court accepts for purposes of this decision that Pronti actually relied upon his understanding of CNA's pension benefits as explained by Moran and as contained in the March 27th e-mail.

Pronti began working for CNA in approximately September of 1996. Pronti worked for CNA until August of 1999, when his position was eliminated as part of a reduction in force. Shortly after learning that he was being terminated, on June 15, 1999, Pronti wrote to CNA's Retirement Plan Administrator seeking a written explanation of his retirement benefits. Pronti attached a copy of the March 27, 1996 e-mail to the letter. Pronti then explained:

> I am now advised that the only credit to be received in the CNA Pension Plan for the years of service in the CIC Pension Plan is for vesting, not accrual. It has also been explained that vesting is used to determine eligibility (5 years being needed to fully vest), but accrual is used to determine the actual benefit. **This distinction was never raised as part of the negotiations leading up to my rehire.**

(Pronti letter, Exh. 4)(emphasis added).

On July 28, 1999, CNA advised Pronti:

> You are correct in your understanding that vesting service is used to determine your right to receive a benefit from the Retirement Plan. You are currently vested in both the CNA and CIC Retirement Plan. Accrual service is used in the calculation of your benefit. As a vested participant in the CIC Plan, you are entitled to receive a benefit of $829.54 at normal retirement age 65. . . .
>
> Your benefits under the CNA Retirement Plan will be calculated using your accrual service with CNA only. Your service with CIC will count towards vesting in the CNA Plan and in determining your early retirement eligibility under the Rule of 65. . . .
>
> Since the CIC Plan has since been merged into the CNA Plan, both benefits will be paid from the CNA Retirement Trust. However,

> each benefit will be calculated independently under the respective
> Plan provisions in which the benefit was earned.  As you can see
> from the above explanation, you are not losing any benefit for your
> time with CIC.  Since you are eligible to receive a benefit from the
> CIC Plan based on your time with CIC, it would be, in effect,
> "double dipping" to provide a CNA benefit based on accrual
> service with both CIC and CNA.

(Def.'s Exh. 5).

On August 20, 1999, Pronti's employment with CNA terminated.

Plaintiff is not seeking to recover double benefits.  Rather, he contends that his entire benefit should be calculated under the more generous terms of CNA's retirement plan.

## PROCEDURAL BACKGROUND

On or about March 27, 2001, Pronti filed an action in federal court, alleging four causes of action against the CNA Defendants: (1) a claim for benefits; (2) a claim for breach of fiduciary duty; (3) a claim for breach of contract; and (4) a claim for detrimental reliance.  By Memorandum/Decision and Order of the Hon. Howard G. Munson, Sr., dated June 12, 2002 and entered June 17, 2002, the Complaint was dismissed on Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to exhaust administrative remedies within the CNA Plan.

After exhausting his administrative remedies, Pronti refiled the present action on December 24, 2003.  Pronti asserted the same four counts asserted in the first action.   Defendants moved to dismiss each cause of action other than the first cause of action for benefits. By Memorandum-Decision and Order filed January 31, 2005, Judge Lawrence E. Kahn dismissed Pronti's breach of contract claim and his breach of fiduciary duty claim.  Judge Kahn's decision was published. *See Pronti v. CNA Financial Corp.*, 353 F.Supp.2d 320 (N.D.N.Y. 2005).

Thus, the only claims presently before this Court are Pronti's claim for benefits under the

CNA Plan and his promissory estoppel claim. Both are discussed separately below.

## DISCUSSION

### I. Standard of Review

The parties agree that ERISA governs this action. ERISA provides a plan beneficiary with a right to judicial review of a benefits determination. *See* 29 U.S.C. § 1132(a)(1)(B). Such discretionary decisions are reviewed under an abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Under such a standard, referred to in this Circuit as an arbitrary and capricious standard, a reviewing court may set aside the plan's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995).

The CNA Plan in question provides that "the Administrator shall have full authority and discretion in the administration of the Plan . . . including but not limited to . . . decide in its sole discretion, eligibility and benefit questions arising under the Plan. . . [and] to adjudicate all claims and appeals under the Plan. . ." (Facts, ¶ 16).

This plan language triggers a discretionary standard of review. *See Kirk v. Readers Digest Ass'n*, 57 Fed. Appx. 20, 23 (2d Cir. Jan. 29, 2003)(applying abuse of discretion standard of review to ERISA plan administrator's denial of benefits when the plan gave the administrator "the full discretionary authority to interpret, administer and apply the plan.").

### II. The Plan

As discussed by CNA in its motion papers, there is no provision in the CNA Plan, or the CIC Plan, which would permit Plaintiff to use the time spent working for CIC for purposes of accruing retirement benefits under the terms of the CNA Plan. The Plan language clearly differentiates

between the concepts of vesting service and accrual service. "'Accrual Service' means that service with the Employer which is to be counted under the Plan in determining the Accrued Benefit of a Member,". . . whereas "'Vesting Service' means the service used to determine whether a Member is vested, and for various other purposes, as described [in a separate section." (See CNA Facts, at ¶ 9). The Plan is clear that Plan Members do not receive benefit accrual credit for time spent as a CIC employee, but instead are only eligible to receive vesting Rule of 65 credit, *to-wit*:

> Combined CNA/CIC Service shall be credited for purposes of vesting and Rule of 65 eligibility only, and not for purposes of benefit accrual under either the Plan or the Continental Retirement Plan.

(CNA Facts, at ¶ 12).

Pronti does not contend that the Plan language itself was applied incorrectly by the Plan Administrator. Instead, Pronti argues that the terms of the CNA Plan were modified by the written promise contained in Ms. Bover's e-mail regarding Pronti's pension benefits. Thus, Pronti has failed to come forward with any evidence from which the Court could find that the Plan Administrator acted arbitrarily and capriciously in applying the terms of the Plan based on Pronti's employment history with CIC and CNA.[3]

As Pronti implicitly acknowledges, his real claim is for promissory estoppel, which the Court will now address.

### III.    Promissory Estoppel Claim

Although Judge Kahn declined to dismiss Plaintiff's detrimental reliance claim, he made

---

[3] As an aside, the Court notes that a discrepancy pointed out by Pronti in the actual calculation of benefits was corrected by CNA promptly after Pronti brought it to their attention. (See CNA's reply brief at pp. 9-10). Thus, there is no present dispute over the correct calculation of benefits under the methodology called for in the CNA Plan as written.

certain observations regarding said claim. First, Judge Kahn rejected Pronti's "detrimental reliance" label, noting that only a promissory estoppel claim could be maintained under ERISA. Second, Judge Kahn assumed that the promise relied upon by Pronti was written rather than oral, "because oral promises are not enforceable under ERISA." (Kahn's Order of January 31, 2005, at pp. 7-8). Based on the Complaint and prior to any discovery, Judge Kahn concluded that it was possible Pronti could prove facts sufficient to prevail on his promissory estoppel claim.

Now, at the summary judgment stage, the Court must revisit the issue.

> As Judge Kahn observed in listing the elements of the cause of action:
>
>> A promissory estoppel claim can be maintained under ERISA. *See, e.g., Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 78 (2d Cir.1996). The elements of promissory estoppel under the federal common law are "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Aramony v. United Way Replacement Benefit,* 191 F.3d 140, 151 (2d Cir.1999) (citing *Schonholz,* 87 F.3d at 79). Furthermore, under ERISA, a plaintiff must also prove the existence of "extraordinary circumstances." *See, e.g., Aramony,* 191 F.3d at 151.

*Pronti*, 353 F.Supp.2d at 325.

The additional element of "extraordinary circumstances" is added "to lessen the danger that commonplace communications from employer to employee will routinely be claimed to give rise to employees' rights beyond those contained in formal benefit plans. . ." *Aramony*, 191 F.3d at 151.

As Judge Kahn further noted, "oral promises are not enforceable under ERISA." *Id.* (*citing Perreca v. Gluck*, 295 F.3d 215, 225 (2d Cir. 2002)). The requirement that a promise, to be enforceable, must be in writing emanates from the fact that ERISA requires that all agreements relating to pension benefits to be in writing. ERISA § 402(a), 29 U.S.C. § 1102(a)(1)("Every employee benefit plan shall be established and maintained pursuant to a written instrument[.]").

Such a requirement "protects employees from having their benefits eroded by oral modifications to the plan" and also "protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to personal not entitled to such under the express terms of the plan." *Perreca*, 295 F.3d at 225.

### (A)     No written promise modifying the terms of the Plan

Pronti acknowledges that the only writing on which he relied is the March 27, 1996 e-mail exchange between Maria Bover and Charles Racansky.  The Court holds as a matter of law that such writing is insufficient to constitute a written promise modifying the terms of the Plan.  The e-mail simply does not provide any representation regarding the extent of the actual benefits to be provided under CNA's benefit plan, much less the finer distinctions between vesting and accrual.   By Pronti's own admission in his June 15, 1999 letter, the distinction between accrual and vesting of benefits was not part of the pre-hiring negotiations.  It seems that what Pronti is actually trying to enforce are the oral representations made to him by Moran, on whom Pronti relied to negotiate the terms of his employment with CNA.  Oral promises may not be used to alter the terms of a defined benefit plan, however, and the Court may not consider Moran's statements to Pronti in determining whether an enforceable promise was made.[4]

In sum, Pronti has failed to come forward with a written promise upon which a promissory estoppel claim could be based.

### (B)     Any reliance on representation contained in the e-mail was unreasonable

Even assuming that the e-mail could somehow be construed to contain an enforceable

---

[4]  Consequently, the Court need not delve into the agency issues presented by the fact that Pronti relied upon representations made by or through Moran, arguably Plaintiff's own agent, rather than by CNA.

promise, no jury could find that Pronti reasonably relied upon the e-mail to conclude that his entire pension earned while employed with CIC would be paid under the more favorable terms of the CNA plan. As the Court has already pointed out, Plaintiff himself acknowledged in June of 1999 that the distinction between accrual and vesting of benefits was not discussed prior to his accepting the job. Not only did Plaintiff subjectively believe the issue was not addressed, it objectively was not addressed by the writing in question. Mr. Racansky's statement that a rehired CIC attorney's "actual service credit" would "depend on their participation in the CIC programs prior to their termination" is general language that requires reference to the plan document itself for specifics. No reasonable person could construe the general language in the e-mail as sufficient to make specific promises about the manner in which Pronti's pension benefit would be calculated. *See Herter v. Dick's Clother & Sporting Goods*, 58 F.Supp.2d 306, 311-12 (S.D.N.Y. 1999)(finding no justifiable reliance as a matter of law where promise of "very good coverage" did not justify belief that pre-existing conditions were covered). Finally, Pronti received the only thing the e-mail can reasonably be construed to promise. He in fact was given "service credit" in the form of vesting credit for his service at CIC. Any interpretation by him that the e-mail promised him something more was clearly unreasonable.

    **(C)    This case lacks "extraordinary circumstances"**

Additionally, even after giving Pronti the benefit of any ambiguities in the evidence and drawing all justifiable inferences in his favor, the record fails to disclose evidence sufficient to satisfy the additional element of extraordinary circumstances. Pronti has failed to come forward with any evidence to show that CNA intentionally induced or deceived him with respect to his pension benefits, or to otherwise demonstrate circumstances "beyond the ordinary." *Aramony*, 191 F.3d at

152.  Discussing the extraordinary circumstances requirement in *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 86 (2d Cir. 2001), the Court failed to provide detailed guidance on what circumstances are "extraordinary," but it explained that a false promise of severance benefits used to induce an employee to retire might rise to the level of "extraordinary," but a promise that was not "used to intentionally induce any particular behavior" on the part of the employee would not.  *Id.* at 102 (citing *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 78 (2d Cir.1996)).

Here, there is no evidence that CNA attempted to induce Pronti with any false promises. Moran, on behalf of himself and Pronti, sought information from CNA, which had acquired CIC by merger, concerning how their proposed reemployment would impact their CIC pension.  CNA's representative for negotiating the employment, Mr. Alio, could not answer Moran's questions and referred Moran to human resources for an answer.  Moran communicated orally with persons in CNA's human resources area.  Moran believed that his question had been answered by Ms. Bover. There is no evidence that Ms. Bover intentionally misled Moran – even Moran did not believe that she had.

This case epitomizes the danger the extraordinary circumstances requirement was added to guard against.  The requirement was deemed necessary "to lessen the danger that commonplace communications from employer to employee will routinely be claimed to give rise to employees' rights beyond those contained in formal benefit plans."  *Aramony*, 191 F.3d at 151.  Here, Pronti did nothing to find out for himself the effect of his reemployment with CNA on an existing benefit.  He hoped to improve the value of an existing benefit, his CIC pension, by going to work for CNA.  He pinned his hopes on what he was told by Moran, never bothering to ask CNA any questions or to read the Plan(s) creating the benefit in question.

The Court holds as a matter of law that this case does not present extraordinary circumstances. Plaintiff's promissory estoppel claim fails for this additional reason.

## CONCLUSION

For the reasons herein stated,

IT IS THEREFORE ORDERED THAT the Motion for Summary Judgment filed by Defendants CNA Financial Corporation and CNA Employee Retirement (Docket No. 28) be, and it is hereby, GRANTED.   Judgment will be entered separately.

IT IS SO ORDERED this   28th   day of November, 2007.

                                        _/s/Garnett Thomas Eisele_____
                                        UNITED STATES DISTRICT COURT